Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
And RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*B.L. v. Uber Technologies, Inc. et al.*, No. 24-cv-7940 | Case No. 3:23-md-03084-CRB (LJC)<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT**<br><br>**PUBLIC VERSION**<br><br>Judge:     Hon. Charles R. Breyer<br>Courtroom:  6 – 17th Floor<br><br>Judge:     Mag. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

**TABLE OF CONTENTS**

                                                                              **Page**

I.    ARGUMENT ............................................................................................... 2

      A.    Plaintiff's Responses To Uber's Sanctions Arguments Are Meritless. ....................... 2

            1.    Uber Identified Repeated Discovery Misconduct That Warrants Sanctions. ... 2

            2.    Plaintiff's Effort To Narrow Rule 37 And Thereby Avoid Sanctions Fails. ..... 5

            3.    Plaintiff Has Not Demonstrated That Her Discovery Misconduct Was
                  Harmless. ................................................................................................. 9

      B.    Uber Complied With Applicable Meet-And-Confer Requirements, As Further
            Confirmed In The Declarations Accompanying This Reply Brief. ............................ 9

            1.    Uber's Motion Was Procedurally Proper. ............................................................. 9

            2.    The Parties Engaged In A Months-Long Meet-And-Confer To No Avail. ......12

      C.    Uber's Requested Sanctions Are Appropriate. ............................................................13

II.   CONCLUSION ................................................................................................................15

DEFENDANTS' REPLY IN SUPPORT OF MOT. FOR SANCTIONS FOR PLAINTIFF'S
DISCOVERY MISCONDUCT
Case No. 24-cv-7940-CRB (LJC)

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991)...............................................................................................................8

*Daramy v. Arctic Storm Mgmt. Grp. LLC*,
2023 WL 5348873 (W.D. Wash. Aug. 21, 2023) ...............................................................7

*Davis v. Los Angeles Travelodge W. P'ship, LP*,
2009 WL 5470093 (C.D. Cal. June 8, 2009) ......................................................................7

*Dayton Valley Invs., LLC v. Union Pac. R.R.*,
2010 WL 3829219 (D. Nev. Sept. 24, 2010) ....................................................................10

*Drueding v. Travelers Home & Marine Ins. Co.*,
2022 WL 17092736 (W.D. Wash. Nov. 21, 2022) ....................................................7, 8, 13

*Fjelstad v. Am. Honda Motor Co.*,
762 F.2d 1334 (9th Cir. 1985) ............................................................................................7

*Heath v. F/V ZOLOTOI*,
221 F.R.D. 545 (W.D. Wash. 2004) ...................................................................................8

*Hornady v. Outokumpu Stainless USA*,
572 F. Supp. 3d 1162 (S.D. Ala. 2021), *aff'd*, 118 F.4th 1367 (11th Cir. 2024)................8

*Hughley v. Leggett*,
2013 U.S. Dist. LEXIS 92587 (D. Md. July 2, 2013)........................................................11

*In re Bard IVC Filters Prods. Liab. Litig.*,
603 F. Supp. 3d 822 (D. Ariz. 2022), *aff'd*, 81 F.4th 897 (9th Cir. 2023)........................14

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
655 F. Supp. 3d 899 (N.D. Cal. 2023) ................................................................................8

*Jimenez v. Menzies Aviation Inc.*,
2016 WL 3232793 (N.D. Cal. June 13, 2016) ..................................................................10

*Lankford v. Reladyne, LLC*,
2015 U.S. Dist. LEXIS 162902 (S.D. Ohio Dec. 4, 2015) ...............................................11

*Legacy Mills, LLC v. Nat'l Sur. Corp.*,
2022 U.S. Dist. LEXIS 228470 (D.N.M. Dec. 20, 2022) .................................................11

*Martinez v. Univ. of San Diego*,
  2024 WL 479970 (S.D. Cal. Feb. 7, 2024) ...................................................................................9

*Mauna Kea Resort, LLC v. Affiliated FM Ins. Co.*,
  2009 WL 10677143 (D. Haw. Mar. 3, 2009) ...............................................................................11

*Mi Familia Vota v. Fontes*,
  344 F.R.D. 496 (D. Ariz. 2023) ..................................................................................................11

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
  427 U.S. 639 (1976) ....................................................................................................................14

*Putz v. Golden*,
  2012 WL 13019220 (W.D. Wash. May 22, 2012) ........................................................................7

*Roadway Express, Inc. v. Piper*,
  447 U.S. 752 (1980) ....................................................................................................................14

*V5 Techs. v. Switch, Ltd.*,
  334 F.R.D. 297 (D. Nev. 2019) ...................................................................................................13

**Rules**

Fed. R. Civ. P. 26(e)(1)(A)-(B) ........................................................................................................6

Fed. R. Civ. P. 37 ................................................................................................................ *passim*

Fed. R. Civ. P. 37(d)(1)(B) ............................................................................................................10

L.R. 37-1 ........................................................................................................................................10

L.R. 37-4(b) ...................................................................................................................................10

L.R. 37-4(b)(2) ..............................................................................................................................10

Unable to defend the egregious discovery violations that led Uber to move for sanctions, Plaintiff's opposition resorts to procedural arguments, technicalities and accusations against Uber in an attempt to deflect from her own misconduct. The fundamental (and largely undisputed) issues, however, are simple and compelling:

- Plaintiff improperly redacted (or simply excised) highly relevant information from her communications, including statements to a healthcare provider that she was ▮▮▮▮ over the independent driver who allegedly raped her. As a result, Uber was unable to use this information during fact and expert depositions. Plaintiff then attempted to justify her baseless redactions by citing non-existent cases on her privilege log—citations she presumably generated through the improper use of AI. To this day, Uber has no way to ensure that all inappropriate redactions have been removed and that relevant evidence is no longer being concealed.

- Plaintiff failed to produce (or selectively produced) other highly relevant records, including her communications with a previously undisclosed mental health provider in which Plaintiff discussed the night of the alleged incident and stated that the focus of her anger was ▮▮▮▮ ▮▮▮▮ Again, Uber was deprived of the opportunity to confront witnesses, including Plaintiff, her medical providers, and her experts with this information at deposition.

- Plaintiff failed to disclose a number of key witnesses with vital information relevant to the parties' claims and defenses, including a witness who may have been on the phone with Plaintiff *during the alleged incident*, a witness whom Plaintiff has ▮▮▮▮ ▮▮▮▮ and three witnesses with whom Plaintiff had extensive conversations about the alleged incident. Even after the identities of these witnesses came to light, Plaintiff continued to misrepresent the extent and nature of her communications with these individuals regarding the alleged incident.

- Plaintiff withheld the identities of three of her mental health providers until after the close of discovery and has not produced any records from them.

To this day, Uber still does not know the full extent of Plaintiff's misconduct or the fees and costs it will incur as a result.

Plaintiff offers no justification for these flagrant abuses. Instead, her opposition rests almost entirely on technical arguments regarding conferral and certification requirements that elevate form over substance. Consistent with Fed. R. Civ. P. 37 and Judge Cisneros's Civil Standing Order E.1, Uber's motion laid out the parties' extensive meet-and-confer communications with citations to the record. Uber also explained that ultimately, those discussions reached a stalemate, requiring the filing of the underlying motion. The full meet-and-confer history is also delineated in the attached declarations of Katelyn Benfield and Michael Vives, putting Plaintiff's procedural arguments to bed. *See* Declaration of Katelyn Benfield ("Benfield Decl.") (attached to Declaration of Laura Vartain ("Vartain Decl.") as Ex. 1); Declaration of Michael Vives ("Vives Decl.") (attached to Vartain Decl. as Ex. 2).[1]

For all of these reasons, discussed further below, Plaintiff fails to rebut that discovery sanctions are warranted pursuant to Rule 37 and/or the Court's inherent authority, and the Court should grant Uber's requested relief.[2]

## I.    ARGUMENT

### A.    Plaintiff's Responses To Uber's Sanctions Arguments Are Meritless.

As set forth in Uber's Motion, Plaintiff's misconduct warrants sanctions under both Rule 37(c) and (d), as well as the Court's inherent authority, because Plaintiff has engaged in repeated, egregious, and ongoing discovery violations by concealing key information, documents, and witnesses in her responses to Uber's document requests and interrogatories. Plaintiff's arguments in response to Uber's core arguments, buried in the latter half of her opposition, misconstrue and misapply the relevant Rule 37 subsections and also fail to justify (or simply ignore) her longstanding discovery misconduct.

#### 1.    Uber Identified Repeated Discovery Misconduct That Warrants Sanctions.

Plaintiff does not even attempt to dispute that she: (1) failed to produce complete records in response to Uber's discovery requests, including by selectively altering and withholding text message chains, Mot. at 10; (2) cited nonexistent cases on her privilege log (likely hallucinated due to the use of

---

[1]    Plaintiff's passing reference to the sanctions dispute in *Dean* is misplaced. That dispute involved trial misconduct, not discovery misconduct, and bears no resemblance to the issues here.

[2]    Uber is refiling this response with revised redacted versions of certain exhibits pursuant to the Court's Order at Dkt. 6207.

DEFENDANTS' REPLY IN SUPPORT OF MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT

Case No. 24-cv-7940-CRB (LJC)

artificial intelligence ("AI")), *id.* at 9; and (3) failed to produce medical records from recently-disclosed providers, *id.* at 6, 11-12. Thus, these discovery violations should be deemed admitted. While Plaintiff attempts to defend her other misconduct, all of her arguments fail.[3]

**Failure to Identify Key Fact Witnesses.** Plaintiff cannot refute that she repeatedly failed to identify key witnesses (including ███████████████████████████████████████████ and that, once they were identified, she failed to accurately describe the scope of their knowledge. Nonetheless, Plaintiff argues that because she ultimately disclosed some of these witnesses in discovery responses (namely, █████████████████ "[t]here is no . . . violation[.]" Opp'n at 14. In so arguing, Plaintiff ignores that multiple iterations of her verified interrogatory responses purported to identify all parties to "each COMMUNICATION [she] had CONCERNING the ALLEGED INCIDENT OR [resulting] DAMAGES," but omitted these individuals. *See* Mot. Ex. 20 at No. 2. Worse, Plaintiff also fails to mention that, even when she finally amended her responses to identify these individuals, she repeatedly lied to Uber about the extent of her communications with them and their knowledge relevant to this case. Opp'n at 4-5. It was not until after fact discovery was closed that Plaintiff amended her verified responses to reveal that: (1) she "had numerous conversations… over the last few years" with Mr. ████ about the alleged incident; (2) she "continue[d] to speak monthly" to Ms. ████ and (3) she "[spoke] frequently with [Mr. ████]" about her allegations. Mot. Ex. 25 at No. 2. Plaintiff also points out that she mentioned ████████ and ████████ "during her deposition," but again, she ignores her failure to disclose that: (1) she may have been on the phone with Mr. ████ during the alleged incident; and (2) ████████████████████████ Mot. at 4, 11, both of which Uber learned for the first time in Plaintiff's April 2, 2026 production (seven months after the close of fact discovery).

The extent of Plaintiff's deception cannot be overstated. Plaintiff amended her verified interrogatory responses six times—each time reaffirming under oath that the list of persons identified as having relevant information was complete and accurate. Nevertheless, all six amendments failed to

---

[3] Plaintiff claims that Uber's brief "relies on an eclectic mix of cases," Opp'n at 12, but she does not attempt to distinguish a single case—presumably because those cases recognize that sanctions are appropriately awarded in situations such as this, where, *inter alia*, a party applied improper redactions, Mot. at 9 (citing cases), failed to timely identify individuals in response to interrogatories, *id.* at 11 (citing cases), and failed to disclose medical records, *id.* at 11-12 (citing cases).

DEFENDANTS' REPLY IN SUPPORT OF MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT

Case No. 24-cv-7940-CRB (LJC)

mention relevant communications with Mr. ▮▮▮ or Mr. ▮▮▮ and minimized the extent of Plaintiff's contacts with Ms. ▮▮▮ Yet, during her June 21-22, 2025 interview with her paid expert Dr. Mechanic, Plaintiff simultaneously identified Mr. ▮▮▮ Mr. ▮▮▮ and Ms. ▮▮▮ as three of four key witnesses whom Dr. Mechanic should interview to understand the impact of the alleged incident. This sequence—sworn misrepresentation to Uber paired with simultaneous disclosure to her own expert—is not a failure to supplement; it is affirmative concealment under oath.

*Failure to Identify Healthcare Providers.* Plaintiff claims that she "timely disclosed the names of new health care providers," Opp'n at 14, but then concedes that she disclosed three healthcare providers (Lindsay Bisby, Guerin Bernardin, and ▮▮▮ after the close of fact discovery. For example, as Plaintiff admits, she "began seeing [provider] Lindsay Bisby on August 1, 2025, and disclosed Ms. Bisby to Uber on October 30, 2025." *Id.* Plaintiff does not provide any justification for the months-long delay in identifying this treater, or for disclosing her only after the close of discovery, which prevented Uber from deposing Mr. Bisby or questioning other witnesses about information in Mr. Bisby's possession. To date, Uber does not know what this information might be, because Plaintiff still has not produced *any* records from Ms. Bisby or any of the other belatedly-disclosed healthcare providers. *See* Opp'n at 5-6, 11.[4]

*Failure To Properly Redact Documents.* Plaintiff essentially concedes that her productions were over-redacted, stating that "certain text messages are newly unredacted" and that "[i]n hindsight [her] counsel may well have redacted less when initially producing the subject text messages." Opp'n at 15; *id.* at 16-17.[5] Plaintiff nonetheless attempts to excuse her misconduct by claiming that: (1) she generally objected to the production of documents; (2) "other discovery—of medical records, at depositions, and of other documents—had revealed much of what" was improperly redacted;[6] and (3) she was unaware of

---

[4]    Plaintiff seeks to blame Uber for her failure to disclose her treaters, claiming that "Uber's aggressive deposition tactics scared off her prior providers." Opp'n at 14. This is just another baseless accusation aimed at deflecting attention from her own discovery misconduct.

[5]    Plaintiff suggests that such concealment is "the nature of sprawling and complex litigation like this MDL." Opp'n at 17. But Plaintiff's discovery obligations were no greater than they would be in an individual case.

[6]    Plaintiff does not provide any examples of how "other discovery" revealed "much of what" was improperly redacted. Nor can she. Information provided in medical records cannot replace relevant text messages. Plaintiff also fails to cite any authority for the proposition that a party can unilaterally redact messages simply because she believes "much of what" was said is included elsewhere.

DEFENDANTS' REPLY IN SUPPORT OF MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT
Case No. 24-cv-7940-CRB (LJC)

"the nature of Uber's defenses." *Id.* at 16-17. None of these excuses justify Plaintiff's admittedly intentional withholding of relevant portions of produced documents.

Plaintiff's characterization of her belated productions that removed redactions as mere "iterative" supplementation (Opp'n at 4) similarly mischaracterizes the nature of her misconduct. Legitimate iterative supplementation involves producing newly discovered responsive materials as they come to light. Here, by contrast, Plaintiff affirmatively redacted and withheld materials she already possessed and knew were responsive, and then cited nonexistent caselaw to justify those redactions. She also selectively excised responsive and relevant messages from conversation threads (e.g., a message saying she wanted ███ ██ Mot. at 3-4, 10. That is not "iteration"; it is concealment followed by grudging, piecemeal disclosure, only after Uber detected the problem.

Plaintiff also seeks to vilify Uber for seeking admittedly relevant and discoverable information, by arguing that Uber intends to use her discovery to "blame" her for the alleged assault. Opp'n at 16-17. This inflammatory and baseless allegation is no excuse for violating discovery obligations. Uber takes the underlying allegations in this case seriously, and nothing about this motion minimizes the gravity of those claims. But Plaintiff has the burden to prove her claims, and defending against Plaintiff's allegations does not amount to blaming her. Indeed, the seriousness of the allegations makes full and fair discovery more important, not less. Plaintiff's use of inflammatory rhetoric to distract the Court from her flagrant misconduct only serves to highlight why sanctions are appropriate.[7]

2.    Plaintiff's Effort To Narrow Rule 37 And Thereby Avoid Sanctions Fails.

Plaintiff also argues that "Uber's motion does not identify any violation of Rules 37(b), (c), or (d)." Opp'n at 2, 12. This is simply untrue. At the outset of its argument in support of sanctions, Uber identified and quoted the two specific provisions of Rule 37 that apply: Rule 37(c)(1) and Rule

---

[7]    Plaintiff's contention that Uber should have raised this issue earlier seeks to pin the blame on Uber for her own flagrant and continuing discovery abuse. Uber has been diligently pursuing these issues for nearly a year but did not discover the scope of Plaintiff's concealment until April 2026, when Plaintiff unredacted highly relevant communications for the first time. And as noted above, the full scope of her misconduct is still unknown to this day, since other communications remain redacted.

DEFENDANTS' REPLY IN SUPPORT OF MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT

Case No. 24-cv-7940-CRB (LJC)

37(d)(1)(A)(ii). *See* Mot. at 7-8. Plaintiff's suggestion that Uber's motion is "vague" with respect to the applicable provisions of Rule 37 on which it is moving is therefore baseless.[8]

Plaintiff also attempts to wiggle her way out of Rule 37 by narrowly interpreting its applicable subsections. According to Plaintiff, Rule 37(c)(1)—which authorizes the imposition of sanctions where "a party fails to provide information or identify a witness as required by" Rule 26(e)—is somehow inapplicable because Uber "does not cite [] Rule [26(e)] at all in its 15-page memorandum." Opp'n at 13, 15. But Uber does cite Rule 26(e)—quoting Rule 37(c)'s reference to it *verbatim*. *See* Mot. at 7 (explaining that Rule 37(c) warrants sanctions when "a party fails to 'provide information or identify a witness as required by Rule 26(a) or (e)'") (quoting Rule 37(c)(1)). In any event, Rule 26(e) applies to Plaintiff whether it was mentioned in Uber's brief or not. Under that provision, a party who "responded to an interrogatory [or] request for production" "must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A)-(B) (cited in Opp'n at 15). Thus, Plaintiff was *required* to update her discovery responses when she learned of key witnesses and new healthcare providers—or that she had improperly withheld documents and redacted text. Mot. at 7-12.

Plaintiff asserts that she was not obligated to supplement under Rule 26(e) because, by the time Uber raised concerns about inappropriate redactions to her text messages, other discovery "had revealed much of what undersigned counsel had previously redacted." Opp'n at 16. As Plaintiff acknowledges, however, Rule 26(e) requires a party to update discovery responses when *the party* learns they are incomplete or incorrect—not when an opposing party discovers the problem. *See id.* at 15. Notably, Plaintiff does not explain which improperly redacted messages contained information supposedly revealed by "other discovery";[9] nor does she explain why there was no duty to supplement her discovery responses to disclose key fact witnesses and healthcare providers with information relevant to her claims.

---

[8]  Plaintiff attempts to muddy the waters regarding the basis for Uber's motion by addressing arguments that Uber never made. For example, Plaintiff asserts that Uber failed to identify Rule 37(b) violations—but Uber never argued that she violated that subsection. Opp'n at 12-13. Plaintiff also insists that she was not required to list certain fact witnesses and healthcare providers in her initial Rule 26(a) disclosures, but Uber never argued that she was. *Id.* at 13-14.

[9]  Plaintiff's assertion that "*much* of what" had been redacted was revealed by other discovery concedes that certain redacted information had still, by that point, not been disclosed, in violation of Rule 26(e). Opp'n at 16.

DEFENDANTS' REPLY IN SUPPORT OF MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT

Case No. 24-cv-7940-CRB (LJC)

Accordingly, Plaintiff cannot refute that she failed to comply with Rule 26(e), warranting sanctions pursuant to Rule 37(c)(1).

Plaintiff also argues that Rule 37(d)(1)(A)(ii) is inapplicable because, although her discovery responses were evasive and incomplete, she can only be sanctioned for a complete failure to respond. Opp'n at 18. But the case on which Plaintiff relies, *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334 (9th Cir. 1985), did not announce any such bright-line rule. In *Fjelstad*, the Ninth Circuit reversed the imposition of sanctions for incomplete and evasive interrogatory responses, because the district court had not made a finding that the responding party's "many objections" were meritless, in bad faith, or invalid. While the Court of Appeals did point out that the responding party "file[d] partial answers to some interrogatories," that was not the basis for its ruling. *Id*. at 1339 (citation omitted). In fact, the court distinguished the facts of *Fjelstad* from other cases in which courts have found that sanctions *are* appropriate where a party lodges incomplete interrogatory responses based on meritless objections. *See id.* Since *Fjelstad* was decided, a number of courts within the Ninth Circuit have similarly recognized that "interrogatory responses . . . [that] were inaccurate and incomplete" can be "sufficient to trigger Rule 37(d)(3) sanctions." *Drueding v. Travelers Home & Marine Ins. Co.*, 2022 WL 17092736, at *9 (W.D. Wash. Nov. 21, 2022); *see also Putz v. Golden*, 2012 WL 13019220, at *5 (W.D. Wash. May 22, 2012) (sanctions appropriate under Rule 37(d)(3) where party "failed to provide accurate information" in interrogatory responses and produce certain responsive documents). This is so because "Rule 37 clarifies that an evasive or incomplete disclosure or response is to be treated as a failure to respond." *Daramy v. Arctic Storm Mgmt. Grp. LLC*, 2023 WL 5348873, at *1 (W.D. Wash. Aug. 21, 2023); *see also Davis v. Los Angeles Travelodge W. P'ship, LP*, 2009 WL 5470093, at *2 (C.D. Cal. June 8, 2009) (cautioning "that evasive or incomplete" discovery responses "are treated under the Federal Rules as failures to respond").

As set forth in detail in Uber's motion, Plaintiff failed to timely produce responsive documents—based on her own subjective views about what was "private." Plaintiff also withheld vital information from Uber (such as the identity of a witness with whom she may have been on the phone during the alleged incident, a witness whom Plaintiff has ███████████████████████ and three witnesses with whom

Plaintiff had extensive conversations about the alleged incident) despite its clear relevance. These "inaccurate and incomplete" responses are sufficient to trigger Rule 37(d) sanctions. *Drueding*, 2022 WL 17092736, at \*9.

Plaintiff also ignores that Uber has moved for sanctions pursuant to this Court's inherent authority as well, which allows the Court "to fashion an appropriate sanction for conduct which abuses the judicial process." Mot. at 8 (citation omitted). As courts have recognized, such sanctions are appropriate separate and apart from Rule 37 where a party engages in conduct that is "tantamount to bad faith" and results in "delaying or disrupting the litigation." *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 924-25 (N.D. Cal. 2023) (citations omitted); *see also Drueding*, 2022 WL 17092736, at \*8 n.9 (explaining that party's arguments about inapplicability of certain Rule 37 provisions "overlooks the Court's 'inherent power' to levy sanctions . . . for abusive litigation practices"); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) (a court "may safely rely on its inherent power" "when there is bad-faith conduct" that Rule 37 is not "up to the task" of addressing). The Court can and should exercise its inherent authority here given Plaintiff's longstanding and repeated discovery violations, which have involved, *inter alia*: (1) applying "privacy" redactions based on fictional caselaw to hide clearly relevant evidence; (2) egregiously failing to disclose medical providers and key fact witnesses; and (3) and, to this day, failing to produce any medical or other records pertaining to several mental healthcare providers.

Plaintiff argues that the Court's inherent authority to issue sanctions is not applicable because Uber cannot prove that she acted in "bad faith," Opp'n at 11, but courts infer bad faith based on conduct similar in nature to Plaintiff's. *See, e.g.*, *Heath v. F/V ZOLOTOI*, 221 F.R.D. 545, 552 (W.D. Wash. 2004) (imposing sanctions based on a party's failure to produce relevant materials pursuant to baseless objections; counsel "could not have believed in good faith that its asserted privileges were valid"); *Hornady v. Outokumpu Stainless USA*, 572 F. Supp. 3d 1162, 1172, 1205 (S.D. Ala. 2021) (finding "all of Defendant's violations, and its pattern of pervasive discovery abuses, to be evidence of Defendant's bad faith" where the defendant, *inter alia*, "failed to produce complete and accurate records" about key evidence in response to discovery requests), *aff'd*, 118 F.4th 1367 (11th Cir. 2024). Thus, even if Rule 37 did not apply (and it does), the Court should still issue sanctions pursuant to its inherent authority.

DEFENDANTS' REPLY IN SUPPORT OF MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT

Case No. 24-cv-7940-CRB (LJC)

3.    Plaintiff Has Not Demonstrated That Her Discovery Misconduct Was Harmless.

Plaintiff does not dispute that she lacks "substantial justification" for her discovery misconduct. *See* Opp'n at 12-13. Instead, Plaintiff argues that "Uber cannot make the showing of prejudice required to obtain sanctions[.]" *Id.* at 19. That is backwards; it is **Plaintiff** who "bears the burden of proving that [her] failure to disclose the required information . . . is harmless." *Martinez v. Univ. of San Diego*, 2024 WL 479970, at *7 (S.D. Cal. Feb. 7, 2024) (cited in Mot. at 12). And in the half-page she devotes to the topic, Plaintiff comes nowhere close to carrying that burden.

Plaintiff's primary argument is that any prejudice to Uber has been negated by Judge Breyer reopening discovery in Wave One cases. Opp'n at 15. Not so. Plaintiff's repeated discovery violations have already forced Uber to expend substantial time and resources addressing misconduct that should have never occurred in the first place. This includes meeting and conferring with Plaintiff's counsel numerous times to obtain the relevant information that was previously withheld; preparing the letter briefs and sanctions briefing; and now preparing for depositions of the late-disclosed witnesses when it should be preparing for trial. In addition, the Court has not determined whether Uber will be allowed to retake fact and expert depositions implicated by the new revelations; even assuming Uber is allowed to do so, supplemental depositions cannot recreate the conditions of initial examinations, leaving Uber at a disadvantage.[10]

**B.    Uber Complied With Applicable Meet-And-Confer Requirements, As Further Confirmed In The Declarations Accompanying This Reply Brief.**

Given the weakness of her arguments, Plaintiff's opposition, unsurprisingly, is largely focused on procedural issues. According to Plaintiff, Uber's motion is procedurally defective because: (1) Uber did not include a formal declaration attesting to "meaningful conferral" along with its motion; and (2) Uber's "conferral efforts were not up to Rule 37 standards." Opp'n at 11. Plaintiff's arguments should be rejected.

1.    Uber's Motion Was Procedurally Proper.

Uber dedicated several pages of its opening brief to detailing the parties' numerous meet-and-confer calls and emails regarding Plaintiff's discovery violations, which ultimately reached an impasse,

---

[10]   Because Plaintiff has yet to produce any records for three of her recently-disclosed providers (Bisby, Bernardin, and ████ the full scope of the prejudice to Uber from not having these materials earlier is still unknown.

DEFENDANTS' REPLY IN SUPPORT OF MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT

Case No. 24-cv-7940-CRB (LJC)

leading Uber to move for sanctions. *See* ECF 5964 at 2-6. Nevertheless, Plaintiff argues that Uber's motion should be rejected as procedurally defective because it did not include a separate, formal declaration certifying that the parties met and conferred in an attempt to resolve the dispute without the need for the Court's intervention. This argument should be rejected.

As set forth above, Uber has moved for sanctions under both Federal Rule 37(c) and (d), as well as pursuant to the Court's inherent authority. Plaintiff asserts that Uber failed to comply with Rule 37(d), which states that the "the movant" must certify that it "in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." Fed. R. Civ. P. 37(d)(1)(B).[11] In addition, Plaintiff points to Local Rule 37-4(b)(2), which provides that a motion for sanctions should be supported by a declaration that provides the factual basis for the motion and "[d]escribe[s] in detail the efforts made by the moving party to secure compliance without intervention by the Court." Civ. L.R. 37-4(b); *see also* Civ. L.R. 37-1 (requiring "pursuant to Fed. R. Civ. P. 37" that "counsel have previously conferred for the purpose of attempting to resolve all disputed issues"). Plaintiff also suggests that Uber violated Judge Cisneros's Standing Order E.1, even though the underlying motion was filed before Judge Breyer, not Judge Cisneros. That Standing Order generally provides that "parties shall meet and confer" before filing any motions and "shall include a certification, which may be submitted separately or ***included in the body of the filing***," that the parties have complied with their meet-and-confer obligations.

Consistent with these provisions, Uber's Motion explained in detail that the parties had met and conferred "repeatedly over the course of several months" to resolve the instant "disputes without the need for Court intervention." Mot. at 6. Uber also attached to its Motion a signed declaration, which included multiple emails between the parties memorializing their extensive meet-and-confer efforts. *See* Mot. Exs. 29, 30, 31. As those emails demonstrate, "Uber reached out" personally "to Plaintiff to meet and confer related to what Uber views to be systematic deficiencies in Plaintiff's productions." Mot. Ex. 31. The

---

[11] Rule 37(d)'s conferral requirement does not apply to sanctions motions brought pursuant to Rule 37(c) or the Court's inherent authority. *See, e.g.*, *Dayton Valley Invs., LLC v. Union Pac. R.R.*, 2010 WL 3829219, at *2 (D. Nev. Sept. 24, 2010) ("[P]ersonal consultation is not required prior to a motion for sanctions pursuant to Rule 37(c)."); *Jimenez v. Menzies Aviation Inc.*, 2016 WL 3232793, at *3 (N.D. Cal. June 13, 2016) (declining to require "meet and confer session" where sanctions sought arose out of court's inherent authority).

emails also document the positions taken by the respective parties during the meet-and-confer process and confirm with Plaintiff's counsel that the parties "appear to be at an impasse with these [discovery issues]," and that Uber "intend[ed] to move forward with . . . a Motion for Sanctions."[12] *Id.* This more than satisfied the requirements of Rule 37. *See*, *e.g., Legacy Mills, LLC v. Nat'l Sur. Corp.*, 2022 U.S. Dist. LEXIS 228470, at *3-4 (D.N.M. Dec. 20, 2022) (holding that inclusion of "details [of] the history of Defendant's good-faith conferral efforts" in the motion itself was sufficient certification under Rule 37(a)'s identical requirement); *Lankford v. Reladyne, LLC*, 2015 U.S. Dist. LEXIS 162902, at *8-9 (S.D. Ohio Dec. 4, 2015) (explaining that a Rule 37(d) certification "must adequately set forth in the motion essential facts sufficient to enable the court to pass a preliminary judgment on the adequacy and sincerity of the good faith conferment").[13]

Because Uber's motion and the attached exhibits demonstrated that the parties had met and conferred "repeatedly over the course of several months" to resolve the instant "disputes without the need for Court intervention," Mot. at 6, they substantively confirmed that the applicable meet-and-confer requirements were met. Further, in the interest of resolving any possible procedural infirmity, Uber is submitting with this reply memorandum the declarations of Mike Vives and Katie Benfield (*see* Exs. 1 & 2 to Vartain Decl.), both of whom participated in the months-long meet-and-confer process that preceded Uber's motion. These declarations attest to the basis for the motion for sanctions and confirm that Uber complied with its meet-and-confer obligations pursuant to Rule 37(d), L.R. 37-4(b)(2), and Judge

---

[12]    Plaintiff's own opposition also describes the lengthy meet-and-confer process. *E.g.*, Opp'n at 5 (noting that "Uber raised the issue of redactions" and "[t]he parties met and conferred in early July 2025"); *id.* at 6 ("Plaintiffs and Uber met and conferred" regarding witnesses "M.B., R.H., and L.P."); *id.* at 6 ("[d]uring the PTO preparation process, Ms. Benfield and Plaintiff's counsel discussed the redactions and the witnesses"); *id.* at 7 (referring to "a March 31, 2026, meet and confer" about fact witnesses); *id.* ("Uber's counsel Mr. Vives finally asked for a meet and confer on April 7, 2026" pertaining to the sanctions motion). These acknowledgements further demonstrate Uber's efforts towards resolution.

[13]    *See also Hughley v. Leggett*, 2013 U.S. Dist. LEXIS 92587, at *6 n.2 (D. Md. July 2, 2013) ("[A]lthough Defendants did not file a separate 'certificate,' the recitation of events in their memorandum – which is signed by their counsel of record – is sufficient to establish that they made good faith efforts to" confer); *Mi Familia Vota v. Fontes*, 344 F.R.D. 496, 509 (D. Ariz. 2023) ("a formal meet-and-confer certification . . . does not serve as an impediment to relief" under Rule 37 where it is clear that the moving party "fulfilled the[] obligation to meet and confer by repeatedly raising concerns" about discovery responses and objections); *Mauna Kea Resort, LLC v. Affiliated FM Ins. Co.*, 2009 WL 10677143, at *1 n.1 (D. Haw. Mar. 3, 2009) (granting motion for sanctions under Rule 37 where "the exhibits attached to the parties' memoranda show that they have met and conferred in accordance with" Rule 37).

DEFENDANTS' REPLY IN SUPPORT OF MOT. FOR SANCTIONS FOR PLAINTIFF'S
DISCOVERY MISCONDUCT
Case No. 24-cv-7940-CRB (LJC)

Cisneros's standing order.

        2.      <u>The Parties Engaged In A Months-Long Meet-And-Confer To No Avail.</u>

Plaintiff next posits—without any citation to supporting authority—that Uber's months-long "conferral efforts were not up to Rule 37 standards[.]" Opp'n at 11. According to Plaintiff, Uber's efforts fell short because: (1) emails are not sufficient to meet the conferral requirement; and (2) Uber communicated to Plaintiff's counsel that it would seek sanctions for her rampant discovery abuse. Opp'n at 11. Plaintiff's arguments lack merit.

***First***, the emails filed with Uber's Motion memorialize in detail multiple meet-and-confer communications that occurred ***over the phone and by videoconference***. *See, e.g.*, Mot. Ex. 31 ("Thanks for meeting with us yesterday related to discovery issues Uber has identified in the BL case. We write to memorialize what we discussed[.]"). Thus, Uber's Motion ***did*** include information about "non-email conferral efforts." Opp'n at 11. In addition, Uber has now provided more details on those communications in the Benfield and Vives declarations, which confirm that Ms. Benfield and/or Mr. Vives were involved in at least four calls with Plaintiff's counsel related to the issues discussed in Uber's Motion. *See* Benfield Decl. ¶¶ 13, 27, 31, 44; Vives Decl. ¶¶ 3-4, 11, 15. As the attorneys' declarations make clear, these meet-and-confer discussions were conducted in addition to the extensive back-and-forth between the parties over email. *See, e.g.*, Benfield Decl. ¶¶ 10-14, 16, 18, 20-28, 30-33, 43-44; Vives Decl. ¶¶ 3, 7-10, 14, 19. And both attorneys confirm that the emails and conferences were aimed at resolving the discovery disputes underlying Uber's motion without Court involvement. *See* Benfield Decl. ¶ 46; Vives Decl. ¶¶ 16, 23. This clear record puts the lie to Plaintiff's claim that meet-and-confer requirements were not satisfied.

***Second***, Plaintiff complains that "Uber's lawyers came to the" latest meet-and-confer "having decided that sanctions were warranted[.]" Opp'n at 11; *id.* at 2. But Plaintiff ignores that the parties had met and conferred for months regarding Plaintiff's concealment of discovery before Uber's counsel concluded that the parties were at an impasse. *See* Opp'n at 5-7 (describing multiple instances where "[t]he parties met and conferred"); *see generally* Benfield Decl. (documenting over 15 instances of Ms. Benfield communicating with Plaintiff's counsel, by email or live via phone/videoconference, about the discovery at issue before Uber filed its sanctions motion). Only ***after*** Plaintiff continued to withhold relevant

DEFENDANTS' REPLY IN SUPPORT OF MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT
Case No. 24-cv-7940-CRB (LJC)

discovery and the parties reached "an impasse with these [discovery issues]" did Uber inform Plaintiff that it would be moving for sanctions, Mot. Ex. 31; *see also* Opp'n at 5-6 (explaining "conferrals with Uber . . . began to break down" when Plaintiff would not budge from her position). Further, Plaintiff's characterization of the parties' final meet-and-confer communications prior to the submission of Uber's motion is incorrect. As Mr. Vives explains, he told Plaintiff's counsel during the parties' April 6, 2026 videoconference that "Uber had attempted to work with Plaintiff's counsel for months to resolve these issues only to be met with delay, a lack of information, and no credible path forward to resolve these issues absent Court intervention" and asked Plaintiff's counsel to "offer a meaningful compromise or explain her conduct in a satisfactory way" to avoid the need for motions practice. Vives Decl. ¶ 16. Plaintiff's counsel did not offer any such explanation or proposed compromise beyond what had already been proposed and rejected. *See id.* ¶¶ 17-21. In addition, when Mr. Vives asked whether Plaintiff's redaction log, which appears to have cited hallucinated caselaw, was created through the use of AI, Plaintiff's counsel refused to answer. *Id.* ¶ 22. Based on this conference, as well as subsequent emails from Plaintiff's counsel, it became clear that "there was no reasonable way to resolve these issues absent Court intervention," and Uber subsequently filed its motion. *Id.* ¶ 20. Uber thus satisfied its meet-and-confer obligations. *E.g.*, *Drueding*, 2022 WL 17092736, at \*5 (discovery conference "satisfie[d] [the Rule 37] meet-and-confer obligation" where the moving party "conveyed [its] intent to file a motion" if its adversary "failed to produce the requested communications or her production was again deficient"); *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 297, 303 (D. Nev. 2019) (finding "a proper meet-and-confer" where "there appear[ed] to be no point in requiring further conferral efforts").

Because Uber appropriately met and conferred with Plaintiff and detailed those efforts in its Motion (and again in the declarations attached to this reply), Plaintiff's procedural complaints are meritless and should be rejected.

### C.    Uber's Requested Sanctions Are Appropriate.

Uber proposed that, as a sanction for Plaintiff's pattern of discovery misconduct, the Court should: (1) impose cost-shifting for the additional depositions already ordered and any additional discovery allowed by Judge Cisneros; and (2) remove Plaintiff's case from the Wave 1 bellwether pool and proceed

DEFENDANTS' REPLY IN SUPPORT OF MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT

instead with *WHB 318* as the fourth bellwether trial. Mot. at 13-15. Plaintiff's arguments in response lack merit.

*First*, Plaintiff argues that the Court should decline to exercise its authority because: (1) Uber may "conduct any remaining discovery they believe necessary" during the reopened discovery period, Opp'n at 19; and (2) "orders to compel discovery" would be "less severe yet still curative," *id.* at 20. As explained above, however, reopened discovery and orders compelling additional discovery will not cure the prejudice Plaintiff has already caused. Further, given that discovery has already been reopened, these actions are tantamount to no sanction at all and therefore would not serve any deterrent or punitive purpose. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-64 (1980) (explaining that "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'") (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)). Removing Plaintiff's case from the Wave 1 pool, by contrast, directly addresses the harms caused by Plaintiff's discovery misconduct, serves both a punitive and deterrent purpose, and helps to "achieve the orderly and expeditious disposition of" this litigation, consistent with the Court's broad authority to manage its docket. *In re Bard IVC Filters Prods. Liab. Litig.*, 603 F. Supp. 3d 822, 831 (D. Ariz. 2022), *aff'd*, 81 F.4th 897 (9th Cir. 2023).

*Second*, Plaintiff argues that Uber's "request for attorneys' fees and costs" is barred because Uber has not submitted a declaration itemizing the expenses caused by her various breaches. Opp'n at 19-20. But Uber cannot yet compute or itemize the fees and costs that will result from Plaintiff's discovery violations because the full scope of the additional discovery necessitated by Plaintiff's misconduct remains unknown. *See* Mot. at 13-14. Once the scope of the additional discovery necessitated by Plaintiff's discovery misconduct becomes clear, the amount of the requested sanction can be calculated.

*Third*, there is no basis for Plaintiff's assertion that a fee award is improper because "Uber also owes Plaintiff materials that the company has hence forth withheld[.]" Opp'n at 20. The discovery to which Plaintiff points stems from a May 1, 2026 Order "adding certain *new* discovery categories to [Uber's Defendant Fact Sheet] disclosures" in light of "lessons learned from the two bellwether trials[.]"

DEFENDANTS' REPLY IN SUPPORT OF MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT

ECF No. 6063 (emphasis added). Uber's production of discovery ordered for the first time this month in no way justifies Plaintiff's intentional withholding of facially relevant information and materials that Uber has been pursuing for a year.

## II.  CONCLUSION

For the foregoing reasons, and all of the reasons set forth in Uber's motion, sanctions are warranted under both Rule 37 and the Court's inherent authority, and Uber requests that the Court: (1) remove Plaintiff's case from the Wave 1 bellwether pool, with the *WHB 318* case to be tried as the fourth bellwether trial; and (2) award all fees associated with the misconduct, including the fees Uber will incur in conducting additional depositions.

DATED: May 22, 2026

Respectfully submitted,

*/s/ Laura Vartain Horn*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, And RASIER-CA, LLC